UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN DIVISION

|  |  |
|---|---|
| REBECCA BLAKESLEY,<br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>COLLEEN MARCUS AND<br>JENNIFER MARCUS,<br><br>　　　　　Defendants. | C.A. NO. 3:24-CV-30017-MGM<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS
SPECIAL MOTION TO DISMISS PURSUANT TO G.L. c. 231, § 59H**

### Introduction

NOW COME the Defendants, Colleen Marcus and Jennifer Marcus ("Defendants"), who respectfully move this honorable Court to dismiss Count 1 (defamation) and Count 2 (tortious interference with business relations) of Plaintiff's Complaint on the grounds that such claims are barred under the Massachusetts anti-SLAPP statute, G.L. c. 231, § 59H.

### Relevant Facts

1.　In or around 2017, the Plaintiff Rebecca Blakesley ("Plaintiff") became a licensed, registered nurse in Massachusetts, License Number RN2316019. See Complaint, ¶¶ 2, 10; Motion Ex. D.

2.　In January of 2021, the Plaintiff alleges that (1) the Defendant Colleen Marcus filed a petition reporting misconduct by the Plaintiff to the Massachusetts Department of Public Health ("Mass. DPH"), Bureau of Health Professions

Licensure, and (2) Defendant Jennifer Marcus (Colleen's daughter-in-law) "filed a similar complaint with the U.S. Department of Health and Human Services, Office of Civil Rights" ("HHS") as well as with the State of Connecticut Department of Public Health ("Conn. DPH"), Practitioner Investigations Unit. Id., ¶¶ 27, 30.

3. The Plaintiff alleges the Defendants' petitioning centered on Plaintiff's misconduct and unethical behavior as a registered nurse, including:

   a. "Rebecca Blakesley [Plaintiff] has been actively violating patient's personal and medical information by sharing 1000's of patients [sic] information in violation of HIPAA. This is part of an ongoing pattern of unethical, fraudulent behavior done for her personal and monetary gain." Id., ¶ 28(a).

   b. "Beginning on or around April 24, 2021, Rebecca realized that she could manipulate the system, bill for 100's of hours, by soliciting family members to complete here [sic] documents, while fraudulently billing for hours she did not work." Id., ¶ 28(b).

   c. Rebecca had "nonemployees complete here [sic] assessments, contact patients, sign RN documents and bill fraudulently." Id., ¶ 28(c).

   d. "The scope of this behavior expanded as Rebecca realized she could continue to amass great wealth by working for multiple agencies at the same time and having multiple people do massive qualities of work, with no regard for the seriousness of comprising [sic] patient privacy information for her personal gain." Id., ¶ 28(d).

   e. "While attending the University of St. Joseph, Psychiatric Nurse Practitioner Program, Rebecca repeatedly engaged in cheating and plagiarism." Id., ¶ 28(e).

   f. "Rebecca fraudulently faked a COVID test." Id., ¶ 28(f).

4. As stated in her affidavit, Defendant Colleen Marcus, a life-long public servant and elected official, reported to government entities and licensing

authorities out of a sense of civic duty so that the matters could be investigated and acted upon, if necessary, by the proper government officials. See Ex. A (Affidavit of Colleen Marcus); Exhibit C (Copy of Petition).

5. The Plaintiff also alleged that Defendant Jennifer Marcus "echoed" Colleen Marcus's same allegations in communications with "Agencies [Plaintiff] was contracted with as a registered nurse," which "lead to [Plaintiff's] termination as a registered nurse with agencies with which she had contracted." Id., ¶ 31.

6. The Plaintiff "came under investigation by the Board of Registered Nursing in Massachusetts." Id., ¶ 33; see also Ex. D (Board of Registration in Nursing, Docket No. NUR-2021-0036).

7. Like her mother-in-law, Defendant Jennifer Marcus, LICSW, a healthcare professional herself, reported out of a sense of civic duty but also because by nature of her occupation she believed she was obligated to report Plaintiff's healthcare misconduct to government officials and to Plaintiff's employers, who she understood were also mandatory reporters and witnesses in the ongoing investigation by the licensure authorities. See Ex. B (Affidavit of Jennifer Marcus).

8. The Plaintiff's employers investigated the reporting and notified patients of a data breach caused by Plaintiff. See Ex. E (example of data breach notification).

9. In January of 2024, displeased by the Defendants' reporting of Plaintiff's alleged lawlessness, the Plaintiff commenced this retaliatory action asserting claims of defamation against both Defendants (Count 1) (see Complaint,

3

¶¶ 37-40) and claims of intentional interference with business relations against both Defendants (Count 2). Id., ¶ 41-44.

10. The Plaintiff's entire theory of liability is that the Defendants' reports were "false and defamatory." Id., ¶¶ 29, 32.

11. On June 7, 2024, after three years of investigation by the Board of Registration in Nursing, Docket No. NUR-2021-0036, the Plaintiff entered into a "Consent Agreement for Reprimand," agreeing that "the following information shall be entered into and become a permanent part of [Plaintiff's] record maintained by the Board":

   a. [Plaintiff] acknowledges there are sufficient facts in the Complaint from which the Board could reasonably find grounds for discipline under M.G.L. c. 112, § 61 and Board regulations. See Ex. D, ¶ 2(a).

   b. The [Plaintiff] admits that … while employed and on duty as a Registered Nurse with various entities, including Life Path, located in Greenfield, MA, Center for Living and Working ("CLW"), located in Worcester, MA, Tri-Valley Inc., located in Dudley, MA, Elder Services of Worcester Area ("ESWA"), located in Worcester, MA, Ethos, located in Jamaica Plain, MA, and Stavros Center for Independent Living, located in Springfield, MA, on or about multiple dates in 2020, she violated patients' rights to confidentiality by providing access to patients' personal and medical information to one or more unauthorized individuals. Id., ¶ 2(b).

   c. The [Plaintiff] acknowledges that her conduct constitutes failure to comply with the Board's Standards of Conduct at 244 Code of Massachusetts Regulations (CMR) 9.03(5), (16), and (47) and warrants disciplinary action by the Board under Massachusetts General Laws (G.L.) Chapter 112, s. 61 and Board regulations at 244 CMR 7.04, Disciplinary Actions. Id.

4

    d. The [Plaintiff] agrees that the Board shall impose a **REPRIMAND** on [her] license for [her] conduct admitted [above.] Id., ¶ 3 (emphasis in original).

    e. The [Plaintiff] acknowledges that after the Effective Date, the Agreement constitutes a public record of disciplinary action by the Board. The Board may forward a copy of this Agreement to other licensing boards, law enforcement entities, and other individuals or entities as required or permitted by law. Id., ¶ 7.

    f. The [Plaintiff] understands and agrees that entering into this Agreement is a final act and not subject to reconsideration, appeal or judicial review. Id., ¶ 8.

12. By agreement, the Parties requested enlargement of the time by which this Special Motion was to be filed, extending that deadline to July 1, 2024, which this Court allowed on June 12, 2024. See Docket Entry No. 10.

## Law

Massachusetts, like many states, enacted an anti-SLAPP law, specifically G.L. c. 231, § 59H, which bars lawsuits that are "based on [another] party's exercise of its right of petition under the constitution of the United States or of the commonwealth." When a special motion movant establishes that she is being sued for protected petitioning activity, the statue provides that the "court shall grant such special motion, unless the party against whom such special motion is made," here, the Plaintiff, shows that:

    (1) the moving party's exercise of its right to petition was devoid of any reasonable factual support or any arguable basis in law and

    (2) the moving party's acts caused actual injury to the responding party.

G.L. c. 231, § 59H.

The Massachusetts anti-SLAPP statute defines petitioning broadly as:

5

> [T]he words 'a party's exercise of its right of petition' shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government.

Id.

The Supreme Judicial Court has observed that this definition is "broad" and "expansive[]" beyond that of other states' anti-SLAPP statutes. Bristol Asphalt Co., Inc. v. Rochester Bituminous Products, Inc., 493 Mass. 539, 549 (2024) (citing Commonwealth v. Exxon Mobil Corp., 489 Mass. 724, 727 n.3, 187 N.E.3d 393 (2022)).

Recently, in February of 2024, the Supreme Judicial Court clarified the burden-shifting analysis for adjudicating special motions to dismiss under the statute. In Stage 1, "a proponent of a special motion to dismiss under § 59H must 'make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the [party's] petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Bristol, 493 Mass. at 555 (internal citations omitted).

"If the threshold showing is made, the second stage of analysis" comes into consideration, under which "the statute requires allowance" of the special motion to dismiss, "unless the [special motion opponent] shows" that the special motion

6

proponent's exercise of its right of petition "was devoid of any reasonable factual support or any arguable basis in law" **and** (2) "caused actual injury to the [special motion opponent]." Id., at 556-557 (citing G.L. c. 231, § 59H).

To assist courts in the adjudication of special motions under G.L. c. 231, § 59H, the Supreme Judicial Court published as an appendix to its holding in Bristol the following overview of the two-stage analysis:



Bristol, 493 Mass. at 569.

Unlike a motion under Fed. R. Civ. P. 12(b)(6), the statute affords the special motion movant the ability to rely not only on the pleadings but also upon "affidavits stating the facts upon which the … defense is based." G.L. c. 231, § 59H. Finally, "[i]f the court grants such special motion to dismiss, the court shall award the moving party costs and reasonable attorney's fees, including those incurred for the special motion and any related discovery matters." Id.

## Legal Argument

### A. *The Mass. Anti-SLAPP Statute is Proper in this Action.*

The Plaintiff's Complaint asserts no federal question, and this action's only basis for federal jurisdiction is by diversity under 28 U.S.C. § 1332. See Complaint, ¶9. The Complaint alleges two causes of action, defamation (Count 1) and intentional interference with business relations (Count 2), both of which arise out of state common law. Id., ¶¶37-44. In diversity cases, the First Circuit and the District Court allow Defendants to invoke the Massachusetts anti-SLAPP statute when applicable to pendant state claims asserted in federal court based upon diversity jurisdiction. See Bearce v. Morton Hosp., No. 22-cv-10708-DJC, 2022 U.S. Dist. LEXIS 228445 (D. Mass. 2022); Godin v. Schencks, 629 F.3d 79, 85 (1st Cir. 2010).

Therefore, the Defendants may properly assert the Massachusetts anti-SLAPP defense in this federal action.

### B. *The Mass. Anti-SLAPP Statute Protects the Defendants' Speech.*

The Supreme Judicial Court has stated, in clear terms, that the Massachusetts anti-SLAPP statute is intended to be a robust defense:

8

> As is apparent from the plain language of § 59H, the special motion to dismiss is strong medicine. It offers a party the prospect of having the claims filed against it dismissed — regardless of the merits of those claims and regardless that the filing of those claims is itself a petitioning activity — as well as a mandatory award of attorney's fees, under a very favorable statutory standard: presumptive entitlement to dismissal, unless the opposing party can prove a negative.

Bristol, 493 Mass. at 555.

Applying Bristol to the facts here reveals that the claims must be dismissed as, in Stage 1, both claims are based on statutorily protected petitioning activity, and, in Stage 2, the petitioning activity was not devoid of any reasonable factual support or arguably basis in the law. Id., 555-557, 569 (appendix).

1. **Stage 1: The Claims are based on Petitioning Activity.**

The goal of Stage 1 is to determine whether the special motion proponent, the Defendants, engaged in a right of petitioning under G.L. c. 231, and that the claims are "based on" that activity. Id. In determining whether statements constitute petitioning, courts "consider them in the over-all context in which they are made." Blanchard v. Steward Carney Hosp., 477 Mass. 141, 149 (2017) (citing North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 862 (2009)). To fall under the "in connection with" definition of petitioning under the anti-SLAPP statute, a communication must be "made to influence, inform, or at the very least, reach governmental bodies — either directly **or indirectly**." Id. (citing Global NAPs, Inc. v. Verizon New England, Inc., 63 Mass. App. Ct. 600, 605 (2005) (emphasis added)). The "key requirement of this definition of petitioning is the

9

establishment of a **plausible** nexus between the statement and the governmental proceeding." Blanchard., 477 Mass. at 149 (emphasis added).

"The archetypical demonstration of this nexus involves a party's statement regarding an ongoing governmental proceeding made directly to a governmental body." Id. (citing Office One, Inc. v. Lopez, 437 Mass. 113, 123 (2002)). "Failing something this clear cut, courts look to objective indicia of a party's intent to influence a governmental proceeding." Id (citing North Am. Expositions Co. Ltd. Partnership, 452 Mass. at 862-863 (statement was petitioning activity where not made to governmental body, but context suggested it was intended to influence governmental body)). In this case, the Defendants have been sued for their speech, all of which relates to Plaintiff's misconduct and licensure as a registered nurse, and all of which was directed to governmental bodies or proceedings directly or indirectly. The allegedly tortious activity by Defendant Colleen Marcus consists solely of statements she made to a state agency, Mass. DPH's Bureau of Health Professions Licensure. See Complaint, ¶¶ 27, 28. The allegedly tortious activity by Defendant Jennifer Marcus consists of her statements made to a governmental agency, HHS; a state agency, Conn. DPH; and healthcare providers, for whom Plaintiff worked. Id., ¶¶ 27, 28, 30.

The Defendants' communications to the government agencies, such as Mass DPH, HHS, and Conn. DPH, are the "archetypical demonstration" of petitioning activity. Massachusetts courts have observed that "DPH and the Bureau are part of the executive branch of government," and "[c]ommunications with DPH and the

Bureau about matters under their regulatory authority fall within the Anti-SLAPP statute." MacNeil v. Guenther, Nos. 145089, 1983CV01332, 2020 Mass. Super. LEXIS 126, at *9 (June 29, 2020).

Moreover, "a complaint made to an executive agency charged with overseeing licensed professionals and raising concerns about a licensed professional is petitioning activity." Id. (citing Kalter v. Wood, 67 Mass.App.Ct. 584, 587 (2006) (letter sent to Division of Professional Licensure complaining of misconduct by chiropractor was protected petitioning activity); Blanchard, 477 Mass. at 151 (statements directly related to DPH's investigation into whether to terminate hospital's license were petitioning activity). For that reason, all of the allegations pertaining to Defendant Colleen Marcus and all of the government reporting attributed to Jennifer Marcus passes Stage 1 of the framework as petitioning activities.

The remaining allegation, that Jennifer Marcus "echoed" the same allegations to "Agencies [Plaintiff] was contracted with as a registered nurse," see Complaint., ¶ 31, also satisfies Stage 1 because communications "had a plausible nexus to" the licensure reporting which is protected petitioning. Blanchard, 477 Mass. at 150. Again, to qualify as "petitioning activity," the statements need not be made directly to a government body, as the statute also protects "any written or oral statement made **in connection with an issue under consideration or review by** a legislative, executive, or judicial body, or any other governmental proceeding." G.L. c. 231, § 59H. "'Even though such statements are communicated to other

11

private citizens rather than directly to the government, they are closely and rationally related to the proceedings proposed to be compromised, and they are in furtherance of the objective served by governmental consideration of the issue under review -- namely, the resolution of grievances." Plante v. Wylie, 63 Mass. App. Ct. 151, 159 (2005).

For example, in Blanchard, the Court found that a hospital's press statements to the Boston Globe about the hospital's compliance with health care regulations, was petitioning activity because it concerned and ostensibly could impact the government body's investigation by refuting the allegations against the hospital. Id., at 150-151. There, the Court found that the statements were intended to move public sentiment and impact DMH's licensure decision-making ***indirectly***, and that the timing of the statements was impactful with "the statements having been made while DMH's investigation was still ongoing." Id., at 151.

Here, Defendant Jennifer Marcus's statements to the agencies have a stronger petitioning basis than the press statements in Blanchard, because Jennifer Marcus's statements were made by her to those who she believed were also mandatory reporters (see Ex. B), who had the power to investigate further, and report and provide additional evidence as witnesses to the governmental body's investigations that she and Colleen Marcus had initiated at the various state and federal licensing and oversight government bodies.  Moreover, the timing once again bodes in favor of deeming the communications a protected petitioning activity,

12

having occurred immediately after the initial reporting and during the investigation by the Board of Registration in Nursing, Docket No. NUR-2021-0036. See Exs. C, D.

In Nicholson v. Woolf, 92 Mass. App. Ct. 1104 (2017), the defendant (special motion movant) made statements to her "coworker, employer, and therapist," three non-governmental third parties, which she alleged were petitioning. However, citing Blanchard, the Court noted that there was nothing special about these non-governmental third parties that would have made it so that the statements would "have reasonably reached governmental authorities" in the future. Id., at 7. The case of Blanchard was distinguished, because there the Court noted that the special movement hospital's statements to the newspaper would have made its way to the governmental body through a third-party; whereas the Nicholson individuals had no connection to report the information to a governmental body. Id. (citing Blanchard, 477 Mass. at 152; Plante, 63 Mass. App. at 159 (2005) ("It stands to reason that statements cannot be 'in furtherance of' petitioning the government if they are not reasonably geared to reaching it")).

Once again, Jennifer Marcus's statements were within the Blanchard standard, because her statements were made during the governmental investigation, to other victims who were likely to be witnesses, whom she believed were being defrauded by Plaintiff's activities, and who were understood by her to be fellow mandated reporters to the same governmental bodies to which she and Colleen Marcus were reporting. Thus, all of the statements at issue in the

Complaint fall under the statute's "broad" and "expansive" definition of petitioning activity. Bristol, 493 Mass. at 549.

Finally, within Stage 1, there is no other conduct at issue beyond the petition activity. Counts 1 and 2 are duplicative and based entirely on the statements addressed above. There are no other allegations in the Complaint alleged to substantiate either cause of action. Therefore, each "challenged count has no substantial basis in conduct other than or in addition to the motion proponent's alleged petitioning activity," and the analysis should proceed to Stage 2 of the Supreme Judicial Court's framework. Bristol, 493 Mass. at 555, 569 (appendix).

### 2. Stage 2: The Petitioning Activity Was Not Devoid of Any Reasonable Factual Support or Arguable Basis.

In Stage 2, "the statute requires allowance of the special motion to dismiss, unless the [special motion opponent] shows" that the special motion proponent's exercise of its right of petition "was devoid of any reasonable factual support or any arguable basis in law," **and** (2) that it "caused actual injury to the [special motion opponent]." Id., at 556-557. The Supreme Judicial Court has acknowledged that "proving petitioning is 'devoid' of any reasonable factual support or any arguable basis in law is a difficult task and one that the statute imposes on the special motion opponent." Id., at 557. In essence, the non-moving opponent must show that the "petitioning activity was a sham." Id., at 566.

In Bristol, the Court gave examples of when this burden has been met. In 477 Harrison Ave., LLC v. Jace Boston, LLC, 477 Mass. 162, 173 (2017), there was no reasonable basis for a criminal complaint application alleging trespass where the

14

complaint was dismissed for lack of probable cause and had been filed "after a Superior Court judge explicitly granted the [special motion opponent] the affirmative right to trespass on the [special motion proponent's] property to protect it from damage." Bristol, 493 Mass. at 558-559.  There, "[t]he combination of the lack of probable cause finding and the Superior Court order supplies the requisite preponderance of the evidence in favor of the conclusion that the criminal complaint lacked any reasonable basis in fact or law." Id.

Similarly, in Van Liew v. Stansfield, 474 Mass. 31, 39-40 (2016), the special motion proponent's petitioning activity consisted of a harassment prevention order application without the requisite "three or more acts of harassment, as required under G. L. c. 258E." Id. As a result, "and as the special motion opponent showed in accordance with his burden to do so, [the SJC] concluded that the petitioning activity (i.e., the application …) was 'devoid of any reasonable factual support or any arguable basis in law.'" Id., at 558-559 (internal citations omitted).

The Supreme Judicial Court has also "tended to 'equate the standard under the anti-SLAPP statute with the concept of frivolousness.'" Id., 559-560 (citing Demoulas Super Mkts., Inc. v. Ryan, 70 Mass. App. Ct. 259, 267 (2007)). "A claim is frivolous if there is an absence of legal or factual basis for the claim, and if the claim is without even a colorable basis in law." Fronk v. Fowler, 456 Mass. 317, 329 (2010). Thus, a special motion opponent could succeed in Stage 2 by establishing that the petitioning activity was frivolous.

15

Here, however, the Plaintiff has no ability to prevail in Stage 2 because all of the allegedly tortious statements concerned Plaintiff's compliance with laws, regulations, and ethical rules applicable to her as a governmentally licensed registered nurse. For example, all of the Complaint's examples of purportedly tortious statements are reports to state and federal licensing authorities about Plaintiff's behavior as a registered nurse:

  a. "[Plaintiff] has been actively violating patient's personal and medical information by sharing 1000's of patients [sic] information in violation of HIPAA," and "This is part of an ongoing pattern of unethical, fraudulent behavior done for her personal and monetary gain." Id., ¶ 28(a).

  b. "Beginning on or around April 24, 20201, Rebecca realized that she could manipulate the system, bill for 100's of hours, by soliciting family members to complete here documents, while fraudulently billing for hours she did not work." Id., ¶ 28(b).

  c. Rebecca had "nonemployees complete here assessments, contact patients, sign RN documents and bill fraudulently." Id., ¶ 28(c).

  d. "The scope of this behavior expanded as Rebecca realized she could continue to amass great wealth by working for multiple agencies at the same time and having multiple people do massive qualities of work, with no regard for the seriousness of comprising [sic] patient privacy information for her personal gain." Id., ¶ 28(d).

  e. "While attending the University of St. Joseph, Psychiatric Nurse Practitioner Program, Rebecca repeatedly engaged in cheating and plagiarism." Id., ¶ 28(e).

  f. "Rebecca fraudulently faked a COVID test." Id., ¶ 28(f).

Each of the Defendants have supplied affidavits stating that their petitioning was sincere and out of a concern for patients, privacy, and safety. See Exs. A and B. These were not outlandish claims or personal attacks, they were measured and

16

legitimate complaints about a healthcare provider who was blatantly violating regulations, privacy and HIPAA regulations, billing regulations, and doctoring her own medical documents, and they were supported by corroborating evidence submitted with the petitions. See, for example, Ex. C. By supplementing their reports with evidence in the form of emails, text messages, and a doctored COVID test, for example, the Defendants' reporting cannot be said to be a "sham." See Ex. C. The affidavits provide further depth to the good faith nature and factual grounds for the Defendants' petitioning. See Exs. A and B.

Finally, there can be no showing of frivolousness, because, as the Complaint concedes, the governmental bodies and "Agencies" took the Defendants' complaints seriously, as indicated by the Mass. Board of Registration in Nursing's three-year investigation of Plaintiff and the "final" adverse disciplinary action and public reprimand entered against Plaintiff. See Complaint, ¶¶ 31, 33-34, 36; see also Ex. D (Plaintiff's "Consent Agreement for Reprimand"). Further, the employers investigated Jennifer Marcus's reporting and found the reporting to be credible, even going so far to send public notices to Plaintiff's victims, which would become evidence in the governmental licensing hearing. See Ex. E.

The factual support submitted with their reporting and the fact that the petitioning resulted in governmental discipline and action conclusively resolves Stage 2 in Defendants' favor. See Plante, 63 Mass. App. Ct. at 161 (""[G]iven the success of special motion movant] in the Land Court action [where the petitioning occurred], **it is manifest from the record that the plaintiffs cannot establish**

17

**the first of these conjunctive requirements** -- that [movant's] statements were devoid of any reasonable factual or legal basis.") (emphasis added).

Addressing, *arguendo*, the "injury" prong within Stage 2, which this Court need not address so long as it agrees the petitioning was not devoid of any reasonable factual support or arguable basis, Plaintiff's Complaint fails to draw a causal link between Defendants' petitioning activities and the injuries as a consequence of her illegal activity. See Dickey v. Warren, 75 Mass. App. Ct. 585, 592 (2009) (burden is on non-moving opponent to establish injury caused by petitioning activity). Here, the Plaintiff's claimed injuries, if any, were caused by her own lawlessness and the investigative efforts of the authorities. The Plaintiff's losses were the inevitable end of her own misconduct in violation of state and federal laws. The Defendants committed no wrongdoing by speaking up and reporting the Plaintiff's violations to the authorities, who could have rejected the reports, found in Plaintiff's favor, or, as here, investigated and corroborated the reports resulting in discipline. The same is true of any employer who ostensibly would have also taken its own steps to review, corroborate, or make its own determination. As the Defendants reporting was grounded in facts and did not cause injury, the Defendants prevail on each section of Stage 2.

C. **Prevailing Defendants are Entitled to Fees and Costs.**

The statute's plain language provides that a prevailing movant "shall" receive costs and fees. Therefore, in addition to dismissing all counts against Colleen

18

Marcus and Jennifer Marcus, the Defendants request leave to submit fee and cost petition applications for all legal fees and costs incurred through this Motion.

## Conclusion

Following the SJC framework contained in the appendix in <u>Bristol</u>, this special motion satisfies Stage 1 because the Defendants engaged in petitioning under G.L. c. 231, Section 59H when they reported to HHS, Mass. DPH, Conn. DPH, and other mandated healthcare reporters. These are the only activities listed in the Complaint to support Count 1 for defamation and Count 2 for intentional interference, thus Stage 1 is satisfied. Stage 2 is likewise satisfied, because the Defendants' petitioning was not a sham or frivolous. Quite the opposite, it was supported by evidentiary corroboration, taken up by the investigating authorities, investigated independently, and resulted in formal discipline of Plaintiff, a copy of which is provided as Exhibit D. Finally, the Plaintiff, not the reporting Defendants, was the cause of her own injuries through her misconduct.

This is the type of petitioning activity that the statute aims to protect from being chilled by retaliatory defamation or interference claims. Anything short of a dismissal will signal to those in healthcare, patients, and society to think twice before contacting a licensure authority or a license-holder's employer upon detecting suspected misconduct, lest they will face a tort suit and years of expensive litigation as punishment for speaking up. For these reasons, the Defendants respectfully request dismissal of this case in its entirety and an award of fees and costs.

*FOR THE DEFENDANTS,*<br>*COLLEEN MARCUS AND*

|  |  |
|---|---|
| | *JENNIFER MARCUS,*<br>*BY THEIR ATTORNEYS,* |
| | */s/ Michael G. McDonough* |
| July 1, 2024 | Michael G. McDonough, BBO #682128<br>Paul M. Bromwich, BBO #712876<br>Egan, Flanagan and Cohen, P.C.<br>67 Market Street, P.O. Box 9035<br>Springfield, MA 01102-9035<br>(413) 737-0260; Fax (413) 737-0121<br>Email: mgm@efclaw.com;<br>pmb@efclaw.com |

### REQUEST FOR HEARING AND ORAL ARGUMENT

In compliance with Local Rule 7.1(b), if this Motion is opposed, then the Defendants request a hearing and oral argument.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

I certify that prior to filing this Motion I conferred with Counsel of Record for the Plaintiff, Patrick Dolan, Esq., in multiple telephone calls as part of a good faith effort to try to resolve or narrow this issue, which attempts were unfruitful.

*/s/ Michael G. McDonough*
Michael G. McDonough

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies of this document will be mailed, first-class mail, postage prepaid, to any unregistered participants.

*/s/ Michael G. McDonough*
Michael G. McDonough

20